**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **WILLIAM J. PATTERSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 04-CV-0427-CVE-SAJ |
| | ) |
| **STATE FARM MUTUAL AUTOMOBILE** | ) |
| **INSURANCE COMPANY, a Foreign** | ) |
| **Insurance Company,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Now before the Court is the Motion for Partial Summary Judgment (Dkt. # 24) filed by defendant State Farm Mutual Automobile Insurance Company ("State Farm"). Plaintiff alleges that State Farm has breached its contract with plaintiff, its insured, and violated a duty to act in good faith or, alternatively, acted in bad faith by denying plaintiff's insurance claim after plaintiff was injured in a motorcycle accident. State Farm seeks partial summary judgment on the claim for bad faith.

**I.**

On November 16, 2001, plaintiff William J. Patterson ("Patterson") was on a motorcycle and stopped at an intersection when he was struck from behind by a car. The investigating officer estimated damages of $100 to the car and $1,000 to the motorcycle. At the time of the accident, Patterson was insured under an automobile insurance policy issued by State Farm, Policy No. 27 2907-C27-36. The State Farm policy provided uninsured/underinsured motorist coverage of $50,000 per person. Prudential Financial insured the driver of the car that struck plaintiff. That policy had applicable liability limits of $100,000.

Patterson went to the hospital on the day after the accident, where doctors diagnosed him with "motorcycle injuries, whiplash, lower back strain." He was advised to use ice packs for a few days and then warm packs, and to take prescription medications as directed.

On December 4, 2001, Dr. Eugene G. Feild treated Patterson. Dr. Feild noted that Patterson had received a severe jolt in the accident, "but did not fall from the motorcycle." Patterson stated that he had pain radiating from his neck to his right shoulder, arm, hand, and fingers. Dr. Feild found that Patterson had low back pain to the left flank which radiated into his legs. Cervical x-rays did not show any recent fracture, but indicated mild to moderate degenerative changes. Dr. Feild noted that Patterson lost three days of work following the accident due to pain. He referred plaintiff for an MRI. Dr. Feild's impression was "cervical and lumbar myofascial strain" and "possible early right cervical radiculopathy and possible herniated disc." On February 2, 2002, Patterson returned to see Dr. Feild, who noted that plaintiff had a broad-based disk herniation at the C6-7 level of the spine. The doctor stated that Patterson "would like to proceed with an anterior cervical diskectomy and fusion for his herniated cervical disc." Dr. Feild referred Patterson to Dr. Stephen Eichert for surgery.

Patterson's attorney, Jef T. Stites, notified State Farm of the Patterson claim by letter dated August 7, 2002. State Farm Claim Specialist Sherri Warren responded to the letter, enclosing an authorization and provider list for Patterson to complete and return. She asked that, if Stites had already gathered Patterson's medical documentation, she needed the complete records and bills to proceed with an evaluation.

Dr. Eichert saw plaintiff on September 12, 2002. Dr. Eichert's records indicate that Patterson developed pain in the neck and shoulders following the motorcycle accident. In Dr.

Eichert's opinion, Patterson had "chronic cervical radiculopathy due to C6 C7 disk herniation and probable bilateral carpal tunnel syndrome." On September 25, 2002, Dr. Eichert performed an anterior cervical diskectomy and an anterior cervical antibody fusion on Patterson.

On October 4, 2002, Dr. Feild followed up with Patterson and noted that Patterson was "experiencing an excellent recovery of his left radicular features." On November 1, 2002, Dr. Feild noted that Patterson had "excellent post-operative evaluation only five weeks post-operative." On December 20, 2002, Dr. Feild stated that Patterson had "solid healing." Dr. Feild also noted that Patterson could return to moderate activities.

On January 20, 2003, State Farm received a copy of a letter from Stites to Prudential. Copies of medical bills and records of treatment were attached to the letter. On January 31, 2003, Warren wrote to Stites, acknowledging receipt of his correspondence. She stated that she would need additional information to complete her evaluation, and she again asked for an executed authorization and provider list. Alternatively, she asked for complete records of Patterson's treatment for the past five years. She additional requested copies of income tax returns for a period of three years prior to the accident, the year of the accident and the year of the surgery.

Patterson returned to Dr. Feild on March 21, 2003 for a follow-up evaluation. Dr. Feild noted that Patterson was doing relatively well considering that he had multiple other areas of spondylosis.

On April 9, 2003, Katie Roberts of State Farm wrote to Stites to inform him that she had taken over the claim. She noted that State Farm was still missing numerous documents needed for the evaluation. She specified the medical bills and records she needed and also stated that she

wanted to review Patterson's medical records for the past five years. She offered to collect the information herself if provided an authorization and a list of names of the treating doctors.

On May 13, 2003, Roberts wrote to Stites, referring to her April 9, 2003 correspondence as to the outstanding items needed "in order for [her] to proceed appropriately." She wrote again on June 11, 2003, mentioning that there were a number of items still outstanding that she would need to in order to proceed in the handling of the claim. She again offered to collect the documentation herself if he provided the requested information.

On August 21, 2003, Stites wrote Roberts, noting that Prudential had tendered its $100,000 policy limits on August 8, 2003. Plaintiff received another $10,000 in benefits which were paid to plaintiff under another policy of insurance held by plaintiff. Stites provided State Farm with written authorization to obtain reports from employers and medical providers. He also produced tax returns for the years 2000, 2001, and 2002, as well as additional bills and records. The tax returns show that Patterson's gross income was $56,860 in 2000, $52,960 in 2001, and $50,840 in 2002. Plaintiff asserts that his lost income totaled approximately $10,000. In the August 21, 2003 letter, Stites made a demand for the policy limits of Patterson's underinsured motorist policy.

On September 18, 2003, Roberts competed her evaluation of the claim in a memorandum provided to her team manager, Brett Thomas. Roberts noted that the medical bills provided totaled $33,053.19. Based on the other information provided, including the tax returns, she estimated lost wages in a range between $3,000 and $5,000. Patterson was a self-employed attorney, as noted in the evaluation. Roberts estimated a range between $40,000 and $55,000 for non-economic damages. Thus, her evaluation of the total value of Patterson's underinsured motorist claim ranged from $76,053.10 to $93,053.19. Roberts wrote Stites on September 18, 2003 and informed him that,

based on the documentation she had in her file, she felt that the claim should settle within the liability limits paid by Prudential.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review,

the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured." Christian v. American Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977). Violation of this duty gives rise to an action in tort. Id. "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the *unreasonableness* of the insurer's actions." Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989) (emphasis in original). "The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989) (citing Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla. 1984) and Christian, 577 P.2d at 903-04)). In other words, an insurer does not subject itself to a claim of bad faith merely by disputing coverage. "The decisive question is whether the insurer has a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'" Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991) (quoting Buzzard v. McDanel, 736 P.2d 157, 159 (Okla. 1987)).

Further, the Oklahoma Supreme Court has recently held that "bad faith does not involve merely negligent behavior." Badillo v. Mid Century Ins. Co., 2004 OK 42, ¶ 31 (No. 98,136, 2004 WL 1245292 (Okla. June 8, 2004)). "If a case is allowed to go to a jury, there must be some evidence of dishonest intentions, unconscientious advantage, or action taken that is unreasonable and unfounded." Id. There is no such evidence in this matter.

6

Patterson maintains that State Farm made a commitment to treat plaintiff "like a good neighbor," to handle plaintiff's claim in a fair and reasonable manner, to listen to him, to be fair, to be open and carry out its part of its contract with plaintiff in good faith, to diligently investigate the facts of his claim, to reasonably and fairly evaluate his claim, and to objectively evaluate his claim. Yet, there is no evidence that State Farm failed in these commitments. Plaintiff points out that State Farm's Auto Claims Manual provides that the claim file *may* contain the following components: statements from the driver of the insured vehicle, the driver of the other vehicle, the occupants of the insured vehicle, and all witnesses, as well as photographs of the subject vehicles and of the accident scene. The fact that the claim file for the accident in this matter contains none of these components is not evidence of bad faith where State Farm did not dispute plaintiff's version of events surrounding the accident and State Farm found no negligence on the part of plaintiff with respect to the accident. Accordingly, it is also irrelevant that State Farm did not take a statement from the investigating officer of the subject accident.

Plaintiff also asserts that State Farm did not independently collect any of plaintiff's medical bills or records during its investigation of the claim. Nor did State Farm attempt to contact any of the plaintiff's medical doctors as part of its investigation. The facts show that State Farm offered to collect the plaintiff's medical bills and records. In any event, plaintiff has not shown that the bills or records upon which State Farm based its evaluation are incomplete. Nor has plaintiff shown that the evaluation would have been different if State Farm had contacted plaintiff's medical doctors. State Farm does not dispute that plaintiff was injured and needed medical treatment.

State Farm's adjuster claimed to consider the following factors or issues as part of her evaluation: plaintiff's medical bills, lost wage information, subjective complaints, and physical

condition before and after the accident, residual effects from the surgery, scarring, emotional aspect of the claim, future treatment, and permanent impairment. Plaintiff does not dispute the amount State Farm assigned to the plaintiff's medical bills. Plaintiff does dispute the amount at which the adjuster valued his lost income, as he claims to have missed 12 weeks[1] and, assuming he made approximately $1,100 per week before the accident, plaintiff argues that portion of his claim should have been valued between $12,000 and $13,000. Yet, even if the adjuster had valued his claim at that amount, the total would have been less than $47,000 ($33,053.19 for medical bills and $12,000 to $13,000 for lost income). Thus, the core of plaintiff's complaint appears to be with State Farm's evaluation of his non-economic damages.

Plaintiff complains that State Farm did not make any effort to talk with plaintiff directly about his subjective complaints, did not contact plaintiff or any of his doctors to determine the residual effects from his surgery, did not request any photographs or make any request to meet with plaintiff to determine the exact nature of his scarring as a result of the subject surgery, did not visit with plaintiff or any of his doctors to determine the emotional aspect of his claim or injury, had no information regarding activities in which plaintiff engaged prior to and after the accident and made no request from plaintiff for such information, did not talk to any of plaintiff's doctors to determine if he would require any future medical treatment or level of permanent impairment, and did not talk to plaintiff or any of his doctors regarding his level of pain subsequent to the surgery. Further, plaintiff complains that State Farm's claim representative did not regularly review the claim, nor did State Farm determine the current value of the claim until State Farm denied the claim. Plaintiff also

---

[1] His lawyer claimed 11 weeks in the demand letter to Prudential. Motion for Partial Summary Judgment, Dkt. # 24, Ex. 15, at 1. The adjuster outlined the reasons for her award of between $3,000 and $5,000 in her evaluation. Id. Ex. 21, at 3.

claims that State Farm's claim representative failed to discuss current value with management to ensure consistent and accurate methods were being employed. Thus, plaintiff argues that State Farm failed to use an objective method to compute non-economic damages.

The flaw in this argument is that plaintiff assumes the evaluation would have been higher if State Farm had taken these actions. There is no evidence to support that assumption. Nor is there any evidence that State Farm's actions, or failure to act, as the case may be, required such activities for a State Farm adjuster to reach a fair and reasonable evaluation of Patterson's non-economic damages. "[W]hen a bad faith claim is premised on inadequate investigation, the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information." Timberlake Const. Co. v. U.S. Fidelity & Guaranty Co., 71 F.3d 335, 345 (10th Cir. 1995) (citing Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1442 (10th Cir. 1993)). Plaintiff has not made the requisite showing.

**IV.**

Plaintiffs has not raised a genuine issue of material fact as to his bad faith claim. The Court finds that a legitimate dispute exists as to the amount of the claim, and the insurer's position is reasonable and legitimate. Further, the record taken as a whole could not lead a trier of fact to find that defendant lacked a good faith belief at the time of denial that it had a justifiable reason for withholding payment on plaintiff's claim. State Farm's conduct under the circumstances was reasonable. Accordingly, plaintiff's claim for damages due to the alleged breach of the duty of good faith and fair dealing fails as a matter of law.

For these reasons, State Farm's motion for partial summary judgment on the issue of breach of the duty of good faith and fair dealing (Dkt. # 24) is hereby **GRANTED.**

**IT IS SO ORDERED** this 20th day of June, 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT